No. 22082.

MONTEZUMA VALLEY IRRIGATION COMPANY *v.*
J. T. WILKERSON.
(446 P.2d 703)

Decided November 4, 1968.     Rehearing denied November 25, 1968.

PARGA, DYER & VINYARD, ROBERT PARGA, for plaintiff in error.

GEORGE R. ARMSTRONG, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

MONTEZUMA Valley Irrigation Company, a mutual ditch company hereinafter referred to as the plaintiff, brought an injunctive action against J. T. Wilkerson, hereinafter referred to as the defendant. More specifically, it was alleged by plaintiff in its complaint that the defendant was unlawfully diverting water from the

Rocky Ford lateral, which lateral was said to be owned by the plaintiff, and plaintiff asked that the defendant be enjoined from thus diverting water from its ditch.

By answer the defendant admitted he was diverting water from that which he chose to call the Rocky Ford arroyo, but asserted his was a lawful diversion based on an adjudicated decree held by him. As indicated, plaintiff denominates the Rocky Ford as a lateral, whereas the defendant prefers to refer to it as an arroyo. Whether it be truly a lateral or an arroyo, we shall simply refer to it as the Rocky Ford.

Trial to the court culminated in a judgment of dismissal and by writ of error the plaintiff now seeks reversal of the judgment thus entered. To understand this controversy a somewhat detailed recital of the evidence adduced upon trial becomes necessary.

Plaintiff diverts water from the Dolores River in Montezuma County and by a series of ditches then transports the water thus diverted to its numerous shareholders, all of whom reside in Montezuma County. In so doing, plaintiff makes use of a great number of ditches, conduits and the like, including the Rocky Ford, title to which it received by deed executed and delivered in 1913 by Wilkerson's predecessor in title. Whether natural water ever flowed in the Rocky Ford, and if so, how much, is one of the issues at least indirectly present in the instant controversy. Be that as it may, it is agreed that the natural drainage of the Rocky Ford is southward into McElmo Creek, which creek in turn empties into the San Juan River.

A bit more of elaboration as concerns the plaintiff's operation is in order. Plaintiff holds a decree in Water District No. 34 for direct flow from the Dolores River in the approximate amount of 538.5 second feet. The water thus diverted is then carried in a generally southerly direction through a series of ditches, canals, laterals, and gates to its various shareholders, all residing in Montezuma County. As a part of its irrigation system,

the plaintiff makes use of the Rocky Ford. More specifically, the Rocky Ford runs in essentially a north-south direction and plaintiff places its Dolores River water in the Rocky Ford at Rocky Ford's north end. This water is then transported southward past headgate No. 1, located on the Wilkerson property. As indicated, the defendant admits that he is diverting water at headgate No. 1, but claims that he has the right to so do. The water then flows southward in the Rocky Ford into what is called Totten Lake. Headgate No. 1, incidentally, is the only gate on the Rocky Ford *north* of Totten Lake. The water then is taken from Totten Lake, again by the Rocky Ford, and is flumed over McElmo Creek and transported southward for the "lower valley" users.

The defendant and his predecessors in title for some time have been shareholders in the plaintiff company and for many years prior to 1952 diverted 28 shares of water at headgate No. 1 on Rocky Ford for use on defendant's land. In 1952 these 28 shares were transferred to another ditch also operated by plaintiff, and this water was thereafter taken from a different headgate on a different ditch. Accordingly, no water was taken by the defendant from headgate No. 1 from 1952 till about 1959. However, in 1959 the plaintiff's ditch rider noticed that the defendant was taking water from headgate No. 1 on the Rocky Ford. A dispute then arose as to defendant's right to thus divert water at headgate No. 1, all of which culminated with the institution in 1961 of the present action, which matter finally came to trial in 1965.

As indicated, the defendant claims an adjudicated right to divert water from headgate No. 1. In this connection, the defendant in 1950 made claim in Water District No. 32 (not Water District No. 34) for .76 cubic feet of water, .24 cubic feet of water conditional, and .25 cubic feet of water domestic out of the Rocky Ford, relating back to 1909. And by decree entered in 1962

in the aforesaid proceeding defendant received a decreed priority for .76 cubic feet of water, .24 cubic feet of conditional water, and .25 cubic feet of domestic water in the winter and dated July 1, 1909. As indicated, the defendant relies on this decree and contends that his present diversion from headgate No. 1 on the Rocky Ford is a lawful appropriation to which he now holds an adjudicated decree.

In connection with this 1962 decree, it should be noted that in 1963 the plaintiff filed a Petition to modify, correct or amend the decree thus entered. As we understand it, this motion has not yet been heard, and the hearing thereon was purposely delayed until the present case could be finally determined. Better procedure would appear to suggest that the motion attacking the decree upon which the defendant now relies should have been ruled on *before* trial of the instant controversy, because if the 1962 decree should be set aside, the defendant's diversion from headgate No. 1 would admittedly be an unlawful one. Therefore, nothing contained herein should be construed as barring the plaintiff from instituting another action should the 1962 decree, upon which the defendant here relies, be set aside or altered. In the meantime, we must resolve the controversy now before us.

■ Plaintiff's main attack on the 1962 decree is that under applicable statute the claim should have been filed in Water District No. 34, instead of Water District No. 32. Plaintiff claims this is important because if defendant's claim had been filed in Water District No. 34, then it would have received the notice by registered mail required by C.R.S. 1963, 148-9-5(1)(a) and (c). Had they been thus notified of defendant's claim, the plaintiff states that it would then have appeared and resisted the claim of the defendant. However, with the defendant filing his claim in Water District No. 32, plaintiff was not entitled to receive, nor did he receive, notice by registered mail, since it neither owned or

claimed to own any water rights in Water District No. 32. Accordingly, the only notice which defendant caused to be made was the publication required by C.R.S. 1963, 148-9-5 (b). In this regard, then, it is plaintiff's basic contention that inasmuch as the defendant filed his claim in the wrong Water District the 1962 decree is void and that this is a jurisdictional matter which permits a collateral attack on the aforesaid 1962 decree. Did the defendant file his claim in the wrong Water District? Let us examine the charge a bit more closely.

C.R.S. 1963, 148-13-35 provides that Water District No. 34 "shall consist of all lands lying in the State of Colorado, irrigated from ditches or canals taking water from . . . that part of the Dolores River within . . . Montezuma County . . ." C.R.S. 1963, 148-13-33 provides that Water District No. 32 "shall consist of all lands in the State of Colorado irrigated by water taken from those natural streams which drain into the San Juan River and not included in Water District Nos. . . . 34 . . ."

In its findings and conclusions the trial court found that as of the date defendant's predecessors in title made their original appropriation of natural water from Rocky Ford, namely 1909, the particular land here in question was not then being irrigated by water from the Dolores River. Accordingly, the trial court concluded that defendant's land was not in Water District No. 34, but was rather in Water District No. 32. In thus concluding the trial court declared that "in determining which water district the defendant's lands are in, the status of those lands as of the date of appropriation should control over any subsequent date."

Plaintiff does not challenge the correctness of the trial court's ruling that the status of defendant's lands as of the date of first appropriation determines the water district in which his subsequent claim should be filed. But plaintiff does challenge, as we understand it, the trial court's finding that as of 1909 defendant's lands were

not being irrigated by water from the Dolores River. In describing plaintiff's transmission system, it is asserted by plaintiff in its brief that prior to 1909 the Dolores River water did flow through the Rocky Ford ditch or lateral southward through the defendant's lands to Totten Lake and the "lower valley" users. As indicated, the trial court made explicit findings that as of 1909 the defendant's lands were not being irrigated by Dolores River water, and that there was no evidence that as of 1909 the Rocky Ford was carrying any water of the plaintiff. So the only issue we are now called upon to resolve in connection with this phase of the case is whether the plaintiff did — or did not — establish that the defendant's lands were being irrigated by Dolores River water as of, and prior to, 1909.

◼ Our review of the record convinces us that the plaintiff failed to show that in 1909, and prior thereto, it was irrigating land from the Rocky Ford with Dolores water and hence the trial court's finding that "at the date of the original appropriation made by defendant's predecessors in title the lands in question were not irrigated by water from the Dolores River . . ." was justified. The only testimony directly bearing on this particular issue is that of the witness Hickman. His testimony was that as of 1908 the Rocky Ford, call it a lateral or an arroyo, was in the same location as it was as of the date of trial. But this witness did *not* testify that the Rocky Ford as of that date was carrying Dolores River water which was used to irrigate the lands adjacent thereto. Whether land adjacent to the Rocky Ford was in truth and in fact being irrigated by water from the Dolores River in 1909 is not our concern. The issue before us is whether plaintiff proved such to be the case, and we agree with the trial court that plaintiff failed to establish this fact. Under the circumstances, then, we must accept the finding of the trial court and as a reviewing court we are not at liberty to set it aside.

◼ Plaintiff contends alternatively that even if

Water District No. 32 be deemed the proper district in which the defendant should file his claim, still the decree is void because due process required that it receive personal notice, rather than mere notice by publication. In thus contending, the plaintiff relies on *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L. Ed.2d 255.

As indicated above, C.R.S. 1963, 148-9-5 sets forth the manner in which notice is to be accomplished in an original water adjudication suit, which is what the defendant initiated with the filing in 1950 of his claim on Water District No. 32. The statute provides for publication, and also for service of notice by registered mail "to all claimants of water rights in the water district who have filings in the office of the State Engineer of Colorado, and also to all persons shown to be water users by the certificate of the Water Commissioner or irrigation division engineer." Counsel for plaintiff concedes that under applicable statutes it was *not* entitled to notice by registered mail of the adjudication proceeding in Water District No. 32, but argues that "due process" requires such notification. Our study of *Schroeder v. City of New York, supra,* leads us to conclude that it does not control the present controversy. The trial court found that the defendant had complied with the various provisions of C.R.S. 1963, 148-9-5 and we conclude that plaintiff's contention that it was entitled to some sort of personal notice is without merit.

■ Having determined, then, that on the record before us the plaintiff is not entitled to collaterally attack the water adjudication decree of 1962 whereby defendant was decreed to have a valid priority from the Rocky Ford dated July 1, 1909, the trial court's further finding that said decree of 1962 was "valid and binding" to the end that the issue as to whether there was in fact an actual appropriation for beneficial use by defendant's predecessor in title in 1909 could not be relitigated in the instant proceeding was also correct.

■ Plaintiff also contends that assuming for the sake

of argument that defendant did have the right to divert from headgate No. 1 on the Rocky Ford, such right had been abandoned by the defendant and he was somehow now estopped from asserting his right. The trial court found, however, that the plaintiff had failed to establish abandonment or estoppel, and its finding on these issues under the circumstances must be upheld. Certainly the testimony bearing on these issues, and more particularly the inferences to be drawn therefrom, posed issues of fact to be resolved by the trial court, and its findings should not now be disturbed by us.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE PRINGLE not participating.