CLOSED BASIN LANDOWNERS ASSO-CIATION, Plaintiff-Appellant,

and

A.Z.L. Resources, Inc., Plaintiff-Intervenor and Co-Appellant,

v.

RIO GRANDE WATER CONSERVA-TION DISTRICT, Defendant and Appellee,

and

Colorado Water Conservation Board and the United States of America, Defendant-Intervenors and Appellees,

and

Steve Vandiver, as Division Engineer, Appellee,

and

Ray G. Slane, Estate of Allen Beard, Gaines W. Schults and K.C. Land & Cattle Company, a Colorado corporation, Non-participating Appellees.

No. 85SA214.

Supreme Court of Colorado, En Banc.

March 23, 1987.

Law Office of Robert F.T. Krassa, Robert F.T. Krassa, Pueblo, for Closed Basin Landowners Assn.

Saunders, Snyder, Ross & Dickson P.C., Melvin B. Sabey, Denver, for A.Z.L. Resources, Inc.

Hill & Robbins, David W. Robbins, Dennis M. Montgomery, Denver, for Rio Grande Water Conservation Dist.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wendy C. Weiss, First Asst. Atty. Gen., Denver, for the Colorado Water Conservation Bd.

Laura Frossard, Robert L. Klarquist, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., John R. Hill, Dept. of Justice, Denver, for the U.S.

ERICKSON, Justice.

The plaintiffs, Closed Basin Landowners Association (Landowners) and A.Z.L. Resources, Inc. (AZL), appeal after summary judgment was entered against them by the water court for Division No. 3 on their collateral challenge to a decree adjudicating a conditional water right to the defendant, Rio Grande Water Conservation District (Rio Grande). We affirm.

## I.

On December 22, 1972, Rio Grande filed an application in Case No. W–3038 for a conditional water right to develop the "Closed Basin Project" in Saguache and Alamosa Counties, Colorado. The Closed Basin Project, first envisioned over fifty years ago, is a mammoth undertaking designed to withdraw water from the unconfined aquifer of the Closed Basin in southern Colorado, and to deliver that water to the Rio Grande River. Normally, water that flows into the Closed Basin from precipitation and irrigation diverted from the Rio Grande is trapped by a natural hydraulic barrier at the southern boundary of the Basin. The water collects in the sump area of the Basin, and much of the water is lost to evaporation and evapotranspiration. The goal of the Closed Basin project is to lower the water table in the sump area by approximately two feet through the construction and operation of over one-hundred shallow wells, and to reduce water losses to evaporation and evapotranspiration. Water salvaged from the sump area is to be delivered to the Rio Grande River to help meet Colorado's obligations to New Mexico and Texas under the Rio Grande Compact. *See* Rio Grande Compact, P.L. No. 96, 53 Stat. 785 (1939); § 37–66–101, 15 C.R.S. (1973). The Closed Basin Project is a federal reclamation project authorized by Congress. Act of Oct. 3, 1980, P.L. No. 92–514, 86 Stat. 964, *as amended*, Act of Oct. 3, 1980, P.L. No. 96–375, sec. 6, 94 Stat. 1505, 1507.

Rio Grande's application for a conditional water right stated that the legal descrip-

tion of each point of diversion was "the entire area of Tract A, ... which makes up stages one and two of the project, and the entire area of Tract B, ... which makes up stages three, four and five of the project." The application further stated:

The salvage of waters is to be accomplished by the construction and operation of approximately 80 shallow wells in Tract A and approximately 70 shallow wells in Tract B which will withdraw waters from the shallow or unconfined aquifer and will be so spaced within their respective tracts as to lower the entire water table within the tracts so as to preclude substantial loss of water through surface evaporation or evapotranspiration.

The application contained a legal description of Tracts A and B by section, township, and range, but did not specify the location of the wells. The application claimed an appropriation by diversion of a total amount of "277 cubic feet [of water] per second of time," but did not specify the amount of water to be diverted from each well. Tracts A and B contain over 100,000 acres, and enclose approximately 170 square miles of land.

On January 11, 1973, the water clerk for Division No. 3 prepared a resume of water applications filed in December 1972, and published the resume in newspapers of general circulation in Saguache and Alamosa Counties, Colorado. Although the application alleged that the claimed water was "not tributary to any stream," the resume did not state whether or not the water was tributary. Aside from that omission, the resume contained the information set forth above from Rio Grande's application. Eleven statements of opposition and four entries of appearance were filed.

On November 9, 1977, a hearing was held before a water referee on Rio Grande's application. After the hearing, the referee referred the application to the water judge in an order which stated:

At ·the hearing ... it developed that some unspecified number of the proposed wells would be located on private lands. The Referee determined that owners of

lands on.which wells were proposed to be located should have notice of this fact, and required applicant to provide the names and addresses of owners of lands affected.... [I]t appears that 63 of the 126 proposed wells are projected to be located on privately owned lands.

The referee proposed that Rio Grande either (1) provide special notice to landowners in the Closed Basin, or (2) amend its application to specify the location of the proposed wells. Rio Grande objected to further notice, and asserted in a memorandum to the court:

The concept of the Closed Basin Project ... is not that of a series of independent diversions through individual wells acting as separate points of diversion. It is a single appropriation, because it depends upon a lowering of the water table under substantially the entire project area, accomplished through the strategic location of wells for the withdrawal of water to achieve the desired pattern of lowered water table. For the same reason, the point of diversion is the entire project area, not the individual well sites. The well locations shown on the project maps and used for the purpose of obtaining the well permits are schematic only. The exact location of the actual wells to be constructed for the first phase of the project is only now being determined in the course of completing the final plan report.... In all probability, most will not actually be constructed at the locations now identified by the well permits.

The water court found that the original resume publication provided proper and sufficient notice to interested parties, and returned the matter to the referee with directions to rule on the application. The referee considered Rio Grande's application, and issued his report on August 23, 1979 approving a conditional water right in favor of Rio Grande. The water court accepted the referee's report with some modifications, and entered a decree on April 21, 1980 granting Rio Grande's application. The water court found that the unconfined aquifer of the Closed Basin, together with its inflow tributaries, constituted a natural

surface stream system subject to appropriation, and granted Rio Grande the conditional right to withdraw a maximum total amount of 117,000 acre feet of water per year through the operation of approximately 129 shallow wells within Tracts A and B. The decree was not appealed.

On March 24, 1982, Landowners[1] and four other plaintiffs filed the instant action seeking a determination that the decree entered in Case No. W–3038 is void. The plaintiffs asserted that the notice given in Case No. W–3038 violated section 37–92–302, 15 C.R.S. (1973 & 1986 Supp.), and the fourteenth amendment to the United States Constitution because the published resume failed to specify the location of the proposed wells. The complaint alleged damage as a result of Rio Grande's priority over subsequent water rights and the state engineer's denial of well permits to members of Landowners and other plaintiffs.

On May 13, 1982, the Colorado Water Conservation Board moved to intervene as a defendant, and filed a motion to dismiss the complaint. On May 20, 1982, the water court entered an order allowing the Colorado Water Conservation Board to intervene.

On May 28, 1982, AZL filed a petition to correct or set aside the decree in Case No. W–3038. AZL later abandoned its petition, and moved to intervene as a plaintiff in Landowners' action on September 16, 1982.[2] The court granted AZL's motion on the same day and allowed AZL to adopt Landowners' complaint.

On June 28, 1982, the United States moved to intervene as a defendant, and filed a motion to dismiss the complaint. The court granted the motion to intervene on September 16, 1982, and allowed the plaintiffs leave to amend its complaint to add a second claim for relief. The second claim for relief alleged that the decree was void because Rio Grande's application failed to state the amount of water withdrawn from each proposed well.

On October 26, 1982, the water court denied the motions to dismiss and granted plaintiffs and plaintiff-intervenor leave to file a second amended complaint setting forth all claims they wished to assert. Plaintiffs and plaintiff-intervenor declined to amend the complaint, and defendant and defendant-intervenors filed timely answers to the first amended complaint.

On April 9, 1984, the defendant and defendant-intervenors filed a motion for summary judgment. Briefs were filed, and the court entered a written order granting the motion on November 29, 1984. Landowners and AZL now appeal the water court's entry of summary judgment pursuant to Colo. Const. art. VI, § 2(2) and section 13–4–102(1)(d), 6 C.R.S. (1973).

## II.

On appeal, Landowners and AZL assert four grounds for reversal of the water court's entry of summary judgment. First, Landowners and AZL claim that the published resume notice in Case No. W–3038 was fatally defective under both Colorado law and the Due Process Clause of the fourteenth amendment because the notice failed to specify the location of the wells and the amount of water to be withdrawn by each. Second, the appellants maintain that notice by publication in Case No. W–3038 is invalid under the United States Supreme Court's decision in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Third, AZL argues that the decree in Case No. W–3038 was void under our decision in

---

1. Landowners is an unincorporated association, the members of which are landowners in the closed basin of the San Luis Valley in Alamosa and Saguache Counties, Colorado. Some, but not all, members of Landowners were members of the Closed Basin Protective Association, which filed a statement of opposition in Case No. W–3038.

2. On June 18, 1984, AZL moved to amend its petition to correct substantive errors in the decree entered in Case No. W–3038, contending that the water of the Closed Basin was "nontributary water, and not subject to administration under Article 92." The water court denied the motion on November 29, 1984, reasoning that the motion was not timely and that the petition had been voluntarily withdrawn on September 16, 1982. *See* § 37–92–304(10), 15 C.R.S. (1973). AZL does not challenge the denial of its motion.

*Stonewall Estates v. CF & I Steel Corp.,* 197 Colo. 255, 592 P.2d 1318 (1979) because the resume notice failed to state the non-tributary nature of the water to be withdrawn from the Closed Basin. Finally, AZL claims that Rio Grande's conditional water right is void under the doctrine announced in *Southeastern Colorado Water Conservancy District v. Shelton Farms, Inc.,* 187 Colo. 181, 529 P.2d 1321 (1975), because the Closed Basin Project will alter the natural condition of the Closed Basin. We disagree, and accordingly affirm the water court's entry of summary judgment.

### A.

Summary judgment is a drastic remedy to be invoked only when there are no genuine issues of material fact and the movant is entitled to relief as a matter of law. *Salida School District R–32–J v. Morrison,* 732 P.2d 1160, 1167 n. 6 (Colo.1987); *Pueblo West Metropolitan District v. Southeastern Colorado Water Conservancy District,* 689 P.2d 594, 600 (Colo.1984). The movant bears the burden of establishing the lack of a genuine issue of material fact, but once the burden is met, the oppos-

ing party must demonstrate that a controverted factual question exists. *Pueblo West,* 689 P.2d at 600. Matters of jurisdiction and sufficiency of process are questions of law for the court based upon uncontested or properly determined jurisdictional facts.[3] *Flick v. Crouch,* 434 P.2d 256 (Okla.1967); *Transamerica Title Insurance Co. v. United Resources, Inc.,* 24 Utah 2d 346, 471 P.2d 165 (1970).

██ It is axiomatic that a court must have jurisdiction over the parties and the subject matter of the case if its judgment is to be valid. *People v. Coyle,* 654 P.2d 815, 819 (Colo.1982); *In re Marriage of Stroud,* 631 P.2d 168, 170 (Colo.1981). To invoke the jurisdiction of a water court, a person seeking a determination of a water right must file an application with the water clerk setting forth facts supporting the ruling sought and a "legal description of the diversion or proposed diversion, a description of the source of the water, the date of the initiation of the appropriation or proposed appropriation, the amount of water claimed, and the use or proposed use of the water." § 37–92–302(1)(a), (2), 15 C.R.S. (1986 Supp.). *See also Pueblo West Metro-*

---

**3.** Landowners asserts that summary judgment was inappropriate in this case because three affidavits filed in opposition to the motion for summary judgment establish issues of material fact with respect to the sufficiency of process in Case No. W–3038. We disagree. Two of the affidavits were prepared by Brent Spronk, a professional engineer, and state that in his opinion descriptions of well locations by a method at least as precise as quarter-quarter sections and descriptions of the amount of water claimed by flow rate from each well are necessary to meet "minimum acceptable standards of accuracy." The third affidavit was prepared by an employee of Spronk's, and states that almost all resumes of applications prepared in Division No. 3 during 1972 stated the location of the proposed diversion with greater specificity than that employed in Case No. W–3038.

Neither Spronk's opinion on the "minimum standards of accuracy" nor the methods of description employed in other cases are relevant to the adequacy of notice in this case. As the water court found, an unusually large number of applications were filed in 1972 to adjudicate water rights diverted by wells to take advantage of the "grandfather" provisions of section 37–92–306, 15 C.R.S. (1973), which allowed holders of underground water rights to obtain a priority

as of the date of the actual appropriation if the application was filed no later than July 1, 1972. Consequently, many applications for underground water rights filed in 1972 were to adjudicate wells which already had been constructed. Rio Grande's application was unique, however, because Rio Grande sought to divert water from the entire project area to lower the water table of the sump area of the Closed Basin uniformly. Regardless of the method of description that may have been used in 1972 in other cases, the adequacy of the resume notice in this case must be judged on its own facts.

The Spronk affidavits do not raise a genuine issue of material fact because the constitutional and statutory sufficiency of notice is a question of law to be determined by the court. Spronk's conclusion that Rio Grande's application does not meet his minimum standards of accuracy are irrelevant to the court's inquiry into the sufficiency of notice as a matter of law. *See Kavanagh v. Hamilton,* 53 Colo. 157, 125 P. 512 (1912) (on collateral attack, the jurisdiction of a court of record must be determined by its own record); *Hughes v. Webster,* 52 Colo. 475, 122 P. 789 (1912) (the judgment of a court of record is supported by a conclusive presumption that jurisdiction was obtained over the party against whom judgment was pronounced, unless the contrary affirmatively appears in the record).

politan District v. Southeastern Colorado Water Conservancy District, 717 P.2d 955, 957–58 (Colo.1986). The water clerk thereafter prepares a monthly resume of all applications, stating the "name and address of the applicant, a description of the water right or conditional water right involved, and a description of the ruling sought." § 37–92–302(3)(a), 15 C.R.S. (1986 Supp.). The resume must be published in local newspapers of general circulation and mailed to any person "the referee has reason to believe would be affected or who has requested the same by submitting his name and address to the water clerk." § 37–92–302(3)(b), (c), 15 C.R.S. (1986 Supp.). Proceedings to determine a water right are not subject to the service of process requirements of C.R.C.P. 4, but are handled through the unique resume-notice provisions of section 37–92–302. *Gardner v. State*, 200 Colo. 221, 614 P.2d 357 (1980). Any person opposing the application may file a verified statement of opposition. § 37–92–302(1)(b), 15 C.R.S. (1986 Supp.).

### B.

Our analysis of appellants' claim that the content of the resume-notice of Rio Grande's application is constitutionally invalid must begin with the United States Supreme Court's decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950). In *Mullane*, a New York statute permitted trust companies to pool small trust estates into a commonly administered fund. The statute also provided that the trust companies may give notice by publication to interested beneficiaries if the company petitioned for a settlement of trust accounts. After such a notice was published by the Central Hanover Bank and Trust Co., an attorney appointed to represent known or unknown beneficiaries specially appeared, and argued that notice by publication was constitutionally infirm. The New York courts upheld the validity of the notice provisions, but the United States Supreme Court reversed. The Court stated:

*An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality*

*is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.* The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. *But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.* The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonable adopt to accomplish it.

*Id.* at 314–15, 70 S.Ct. at 657 (emphasis added and citations omitted).

*Mullane* teaches that the constitutional sufficiency of the content of a notice to interested parties must depend on the particular facts and circumstances of the case. The court's inquiry must focus on the reasonableness of the notice, giving due regard to the subject with which the statute deals and the practicalities and peculiarities of the case.

■ The published resume in Case No. W–3038 was constitutionally sufficient when reviewed in the light of *Mullane.* The published notice stated that the nature of the appropriation was the "salvage of waters" to be accomplished by the strategic placement of wells within two specifically described tracts of land so as to lower the water table over the entire area. The concept of the Closed Basin Project was not the appropriation of water from many discrete points, but a diversion of water from the entire area. The content of the published resume gave reasonable notice that the points of the proposed diversion would consist of the entire area of Tracts A

and B, that water would be withdrawn by means of wells within the shallow or unconfined aquifer, that the wells would be spaced so as to lower the entire water table within the two tracts, and that the total amount of water claimed was 277 cubic feet per second. Appellants' claim that "[n]o interested person or owner of water rights would be able to ascertain from the Application whether his interests or water rights would be affected thereby" fails where the content of the resume adequately notified interested parties of the amount of the appropriation and that the appropriation would lower the water table a stated amount over a precisely described area.

We therefore conclude that based upon the unique facts of this case, the content of the published resume described the proposed appropriation with sufficient precision to withstand constitutional attack.

## C.

We also reject the appellants' contention that the resume's failure to describe the location of the well sites and the amount of water to be withdrawn violates the notice provisions of the Water Right Determination and Administration Act of 1969 (the Act). Section 37–92–302(3)(a), 15 C.R.S. (1986 Supp.), of the Act provides that the water clerk shall prepare a resume of all applications in the water division filed during the preceding month, "which shall give the name and address of the applicant, a description of the water right or conditional water right involved, and a description of the ruling sought." Section 37–92–302(2), 15 C.R.S. (1986 Supp.), provides that the standard forms for applications for a determination of a water right or a conditional water right shall require "a legal description of the diversion or proposed diversion, a description of the source of the water, ... the amount of water claimed, and the use or proposed use of the water."

Because the notice provisions of the Act establish the only statutory mechanism to advise interested parties of the pendency of an application for a conditional water right, the applicant must strictly comply with the requirements of the Act. *See*

*Danielson v. Jones,* 698 P.2d 240 (Colo. 1985); *G. and M. Properties v. Second Judicial District,* 95 Nev. 301, 594 P.2d 714 (1979). *See also Coppinger v. Coppinger,* 130 Colo. 175, 274 P.2d 328 (1954) (constructive service is in derogation of the common law, and it is imperative that there be strict compliance with every requirement of rule or statute authorizing constructive service); *Arnold v. Newhall County Water District,* 11 Cal.App.3d 794, 96 Cal.Rptr. 894 (1970) (when jurisdiction is obtained by constructive notice, there must be strict compliance with the mode of service prescribed by statute). However, compliance with the notice provisions of the Act must be judged with reference to the underlying purpose of the notice: to put interested parties to the extent reasonably possible on inquiry notice of the nature, scope, and impact of the proposed diversion. For example, in *Pueblo West Metropolitan District v. Southeastern Colorado Water Conservancy District,* 689 P.2d 594 (Colo.1984), we stated:

> Contrary to the protestants' assertion, there is no "notice" problem with Southeastern's 1980 application, since both the application and resume indicated that it was the 1962 conditional storage decree for Pueblo Reservoir and the 1969 conditional storage decree for Turquoise Lake which Southeastern was seeking to make partially absolute.... *[B]ecause the language of those conditional decrees was broad enough to encompass storage of western slope water in exchange for eastern slope water, the resume, which made reference to those decrees, was sufficient to put interested persons on notice of the absolute storage rights sought by Southeastern....* [I]n the instant case neither the application nor the resume prepared from it was in any way misleading as to the nature of the conditional water storage rights sought to be made absolute.

*Id.* at 601–02 (emphasis added and footnote omitted).

Similarly, in *Danielson v. Jones,* 698 P.2d at 245, we noted that "compliance with the statutory notice provisions is es-

sential to provide a meaningful opportunity to those who might be injuriously affected by the decree to oppose the application."

█ A conditional water right is adjudicated by a judicial decree recognizing the existence of an uncompleted appropriation. *See City of Denver v. Colorado River Water Conservation District,* 696 P.2d 730, 745 (Colo.1985). If the water right is perfected with reasonable diligence, the priority date of the appropriation will relate back to the date on which the appropriator took the "first step" to secure the water right. *Id. See also City of Aspen v. Colorado River Water Conservation District,* 696 P.2d 758, 761 (Colo.1985). Since a conditional decree is a judicial recognition of an unperfected appropriation, the standard of notice required to form the first step of an appropriation is instructive in determining the standard of notice required under the Act. In *City of Denver v. Colorado River Water Conservation District,* 696 P.2d at 747 n. 13, we said in addressing the first step of an appropriation of water:

> The key is that the appropriator must provide interested persons with notice "of such a character that they may fairly be said to be thereby charged with at least such notice as would reasonably be calculated to put them on inquiry of the prospective extent of the proposed use and consequent demand upon the water supply involved." *Fruitland Irrigation Co. v. Kruemling,* 62 Colo. 160, 165, 162 P. 161, 163 (1916).... *We decline to endorse the referee's conclusion that in every case, a would-be appropriator must determine the exact amount of water to be diverted at a precisely located point of diversion before that appropriator can form the necessary intent to appropriate or provide sufficient notice to others.* Rather, the determina-

tion must always be made on an ad hoc basis, taking into account whether the particular facts of each case satisfy the purposes underlying the requirements of the first step test.

(Emphasis added.)

█ Rio Grande maintained throughout Case No. W–3038 that it did not claim a conditional water right for each well as a separate point of diversion. Rather, Rio Grande claimed the entire area of Tracts A and B for purpose of salvaging water from the sump area of the Closed Basin and lowering the water table uniformly over the two tracts. As required by section 37–92–302(3)(a), 15 C.R.S. (1986 Supp.), the resume notice included a description of the ruling sought and the conditional water right involved. The resume put interested parties on inquiry notice of the nature, scope, and impact of the proposed diversion, and complied with the provisions of the Act.[4] Giving regard to the unusual nature of the Closed Basin Project, nothing more was required of Rio Grande in its application for a conditional water right.

### D.

█ We do not address the appellants' assertion that notice by publication is constitutionally invalid under the United States Supreme Court's decision in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).[5] The manner of service employed in Case No. W–3038 was not challenged by the appellants until AZL filed its reply brief to Rio Grande's brief in opposition to the motion to alter or amend the judgment. Because the issue was not raised in the motion to alter or amend the judgment, it will not be considered on appeal. C.R.C.P.

---

**4.** Landowners also contends that the decree in Case No. W–3038 is void because Rio Grande failed to comply with the application form adopted in Water Division No. 3. We disagree. The form to which Landowners refers is an application for "domestic and other small wells," and does not apply to Rio Grande's proposed appropriation. Further, even if the form was pertinent to Rio Grande's application, C.R. C.P. 90 permits the water court to accept an application which is not in conformity with the forms if "strict conformity may be unsuitable, prejudicial, or impose an unreasonable burden."

**5.** In *Montezuma Valley Irrigation Co. v. Wilkerson,* 167 Colo. 192, 446 P.2d 703 (1968), we held that the notice provisions of the predecessor of section 37–92–302, 15 C.R.S. (1986 Supp.), were constitutional.

59(f); *Wagner v. Allen*, 688 P.2d 1102, 1109 (Colo.1984).[6]

Furthermore, the appellants have not alleged that they failed to receive actual notice of the application, a prerequisite to constitutional standing. *See Pueblo West Metropolitan District v. Southeastern Colorado Water Conservancy District*, 689 P.2d 594, 602 n. 9 (Colo.1984). Even if the appellants made such a claim, it would conflict with allegations in their complaint that indicate that appellants were aware of the application filed in Case No. W–3038. The complaint stated: "[n]o interested person or owner of water rights, would be able to ascertain from the Application whether his interests or water rights would be affected thereby, ... *nor were Plaintiffs herein, [or] their members ... in fact able to so ascertain.*" (Emphasis added.)

Landowners asserts that the alleged lack of proper notice in Case No. W–3038 deprived the water court of subject matter jurisdiction, and rendered the decree void and subject to attack at any time. We disagree. While it is true that a judgment of a court lacking subject matter jurisdiction is void, *see City of Grand Junction v. Kannah Creek Water Users Association*, 192 Colo. 284, 290, 557 P.2d 1173, 1177 (1976); *Triebelhorn v. Turzanski*, 149 Colo. 558, 561–62, 370 P.2d 757, 758 (1962), we are persuaded that the water court did have subject matter jurisdiction in this case.

■ Subject matter jurisdiction concerns "the court's authority to deal with the class of cases in which it renders judgment." *In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo.1981). A court has jurisdiction of the subject matter "if the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority." *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo.1986) (quoting R. Casad, *Jurisdiction in Civil Actions* ¶ 1.10(1) (1983)). Even if the appellants did not receive constitutionally suffi-

cient notice, that error would not deprive the water court of subject matter jurisdiction to adjudicate a conditional water right to Rio Grande in Colorado water subject to appropriation under the Act. *See* §§ 37–92–203, –302, 15 C.R.S. (1973 & 1986 Supp.); *Bubb v. Christensen*, 200 Colo. 21, 610 P.2d 1343 (1980) (an application for a conditional water right involves a "water matter" over which the water court has exclusive jurisdiction). In each of the cases cited by Landowners in which the court was held to be without subject matter jurisdiction, the court lacked power granted to it by the state to entertain the action. *See City of Grand Junction v. Kannah Creek Water Users Association*, 192 Colo. 284, 557 P.2d 1173 (1976) (a court does not have jurisdiction to review, redetermine, or set aside a final judgment entered in another proceeding); *Whitten v. Coit*, 153 Colo. 157, 385 P.2d 131 (1963) (water court does not have subject matter jurisdiction over the appropriation of water from a closed artesian basin not tributary to any stream); *Triebelhorn v. Turzanski*, 149 Colo. 558, 370 P.2d 757 (1962) (trial court lost subject matter jurisdiction to divide marital property where the final divorce decree did not reserve the issue for future consideration); *West End Irrigation Co. v. Garvey*, 117 Colo. 109, 184 P.2d 476 (1947) (Colorado water courts have no authority to determine the priority of an appropriation outside the state); *Thorne v. Ornauer*, 6 Colo. 39 (1881) (appellate court did not have subject matter jurisdiction to hear an appeal from a judgment that did not exceed twenty dollars, exclusive of interest and costs); *Sanchez v. Straight Creek Constructors*, 41 Colo.App. 19, 580 P.2d 827 (1978) (failure to comply with the time limitations for filing a petition for reconsideration with the Industrial Commission deprives the court of appeals of subject matter jurisdiction).

**E.**

■ AZL's remaining contentions may not be raised in a collateral attack to an

---

**6.** The Colorado Rules of Civil Procedure apply to proceedings under the Act if they are consistent with the provisions of the Act. *Danielson v. Jones*, 698 P.2d 240, 244 n. 5 (Colo.1985). Rule 59(b), as amended effective January 1, 1985, now provides that the filing of a motion for post-trial relief does not limit the issues that may be raised upon appeal.

otherwise valid decree. A trial court has jurisdiction to render an erroneous decision, which may be reviewed on appeal. *Stiger v. District Court,* 188 Colo. 407, 535 P.2d 508 (1975). Consequently, a judgment entered within the jurisdiction of the court, even though wrong, is not subject to collateral attack. *Brennan v. Grover,* 158 Colo. 66, 404 P.2d 544 (1965), *cert. denied,* 383 U.S. 926, 86 S.Ct. 929, 15 L.Ed.2d 845 (1966).

AZL's assertion that the resume notice was defective because it failed to state the non-tributary character of water in the Closed Basin is inconsistent with the water court's finding that the water was a natural surface stream system subject to appropriation. That finding is not subject to a collateral attack.

Similarly, AZL's claim that the decree was invalid under *Southeastern Colorado Water Conservancy District v. Shelton Farms, Inc.,* 187 Colo. 181, 529 P.2d 1321 (1975)[7] assails the correctness of the decree, and not the water court's jurisdiction to enter it.

Accordingly, the water court's entry of summary judgment is affirmed.

---

7. In *Shelton Farms,* we held that an appropriator may not claim a water right outside the priority system by establishing that water was salvaged by the destruction of phreatophytes (water-consuming plants) on the appropriator's land.