Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us.  Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 9, 2019

## 2019 CO 74

**No. 18SA215, *The Luskin Daughters 1996 Trust v. Young*—Water Law—Personal Jurisdiction—Attorney Fees.**

The Trust appealed from an order of the water court dismissing its complaint for declaratory and injunctive relief, as well as for damages.  The water court concluded that in the absence of an application for the determination of a water right, the Trust's claim of interference by the Youngs with its unadjudicated appropriative rights to springs that arise on the Youngs' land could not proceed before the water court.  It therefore granted the Youngs' motion, pursuant to C.R.C.P. 12(b)(1), (2), or (5), to dismiss.

The supreme court affirmed and remanded for a determination of attorney fees.  The court held that because the water court could not provide the Trust's requested relief without the Trust's first having adjudicated its water rights in accordance with section 37-92-302, the water court properly dismissed the Trust's complaint.  It also held that because the Youngs successfully defended the

dismissal of this tort action on appeal, they are statutorily entitled to their reasonable appellate attorney fees, and it remanded the case to the water court for a determination of the amount of those fees.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 74**

**Supreme Court Case No. 18SA215**
*Appeal from the District Court*
Weld County District Court, Water Division 1, Case No. 18CW3063
Honorable James F. Hartmann, Water Judge

**Plaintiff-Appellant:**

The Luskin Daughters 1996 Trust for the benefit of Lyndell Joy Luskin
Ackerman, Matthew Riley, Trustee,

v.

**Defendants-Appellees:**

Steve Young a/k/a Stephen W. Young and Heather Young a/k/a Heather A.
Young,

and

**Appellee Pursuant to C.A.R. 1(e):**

Corey DeAngelis, Division Engineer, Water Division 1.

**Judgment Affirmed**
*en banc*
September 9, 2019

**Attorneys for Plaintiff-Appellant:**
Alperstein & Covell, P.C.
Gilbert Y. Marchand, Jr.
  *Denver, Colorado*

**Attorneys for Defendants-Appellees:**
Porzak Browning & Bushong LLP
Kevin J. Kinnear
         *Boulder, Colorado*

No appearance by or on behalf of Corey DeAngelis, Division Engineer, Water Division 1.

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.

¶1 The Trust appealed from an order of the water court dismissing its complaint for declaratory and injunctive relief, as well as for damages. The water court concluded that in the absence of an application for the determination of a water right, the Trust's claim of interference by the Youngs with its unadjudicated appropriative rights to springs that arise on the Youngs' land could not proceed before the water court. It therefore granted the Youngs' motion, pursuant to C.R.C.P. 12(b)(1), (2), or (5), to dismiss.

¶2 Because the water court could not provide the Trust's requested relief without the Trust's first having adjudicated its water rights in accordance with section 37-92-302, the water court's dismissal of the Trust's complaint is affirmed. Because the Youngs have successfully defended the dismissal of this tort action on appeal, they are statutorily entitled to their reasonable appellate attorney fees, and the case is remanded to the water court for a determination of the amount of those fees.

**I.**

¶3 In 2018, The Luskin Daughters 1996 Trust filed a Complaint for Declaratory and Injunctive Relief and Damages in the Water Court for Division 1, asserting interference by Steve and Heather Young with the Trust's right to use natural spring water that historically arose on the Youngs' property. The complaint alleged that the Trust and the Youngs own adjacent parcels of land; that in 2017

3

the Youngs built a house that destroyed one or more ditches that had historically delivered spring water to the Trust's property; and that those water rights had been used on the Trust's property for purposes of irrigation, animal watering, wildlife, and recreation. The complaint conceded, however, that those water rights had never been adjudicated.

¶4 The Trust's complaint actually asserted five separate claims for relief, seeking: (1) a declaratory judgment confirming the existence of its unadjudicated water rights, (2) a declaratory judgment confirming the existence of ditch easements for those water rights, (3) injunctive relief from the Youngs' interference with those water rights, (4) injunctive relief from the Youngs' trespass and damage to the Trust's ditch rights, and (5) damages.

¶5 Without answering the complaint, the Youngs filed a motion to dismiss, premised on three different provisions of C.R.C.P. 12. First, the Youngs asserted that the water court lacked jurisdiction over the Trust's first claim for declaratory relief, arguing that its claim effectively sought an application for a "determination of a water right" under section 37-92-302(1)(a) of the 1969 Water Right Determination and Administration Act, which on its face mandates compliance with the resume notice and publication procedures set forth in subsection 302(3). Second, they asserted that since the water court lacked jurisdiction to consider the only "water matter" in the Trust's complaint, it similarly lacked ancillary

4

jurisdiction over the remaining claims. Finally, the Youngs moved to dismiss on the alternate ground that even if the water court were determined to have jurisdiction over the Trust's claims, it could not provide the Trust's requested relief because although an unadjudicated appropriative right may be reduced to an adjudicated water right, until it has been so adjudicated, it cannot itself be judicially enforced against another party.

¶6 The water court granted the motion to dismiss, reasoning that by seeking a declaration of its undecreed water rights pursuant to Rule 57, without proceeding according to the statutorily mandated process for adjudicating such rights in the first instance, the Trust was asking it "to operate outside the 1969 Act." The court ultimately concluded that it did not have the "authority" to make such a determination. In its order granting the motion to dismiss, the water court indicated that in the absence of an application for the determination of a water right pursuant to the Act, it lacked the jurisdiction to grant the relief requested in the Trust's claims.

¶7 The Trust appealed to this court from the water court's ruling.

## II.

¶8 The 1969 Act defines a "water right" as "a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same." § 37-92-103(12), C.R.S. (2019). We have therefore

5

made clear that one does not own water but merely owns a right to use water within the limitations of the prior appropriation doctrine. *Kobobel v. State Dep't of Nat. Res.*, 249 P.3d 1127, 1134 (Colo. 2011). More particularly, in Colorado a property right in water entitles the holder "to use beneficially a specified amount of water, from the available supply of surface water or tributary groundwater, that can be captured, possessed, and controlled in priority under a decree, to the exclusion of all others not then in priority under a decreed water right." *Empire Lodge Homeowners' Ass'n v. Moyer*, 39 P.3d 1139, 1147 (Colo. 2001).

¶9     Although the right to use water is created when a person appropriates or initiates an appropriation of unappropriated water of a natural stream of the state, *Shirola v. Turkey Cañon Ranch Ltd. Liab. Co.*, 937 P.2d 739, 748 (Colo. 1997), only upon adjudication of that right is the amount and priority of the right identified, *Empire Lodge Homeowners' Ass'n*, 39 P.3d at 1148. Therefore, as we have also previously made clear, absent an adjudication under the Act, water rights are generally incapable of being enforced. *Shirola*, 937 P.2d at 749 ("Generally then, a vested water right is not legally enforceable through the water administration system unless it is represented by a water court decree, obtained after full adjudication.").

¶10     The significance of a water right's adjudication does not end there however. We have also indicated that an adjudication is necessary for maintaining a related

6

action premised upon the existence of a claimed water right. *See In re Tonko*, 154 P.3d 397, 407 (Colo. 2007). Because a condemnation action involves issues such as necessity and valuation in determining the compensation award for a ditch or pipeline right-of-way needed for water transportation in the exercise of a water right, we found in *Tonko*, that the adjudication of a water right was actually a "prerequisite" for maintaining the private condemnation action for ditch easements allowing for the exercise of that water right. *Id.*

¶11 The 1969 Act outlines the exclusive method to obtain adjudication of one's water right. Subsection 302(3) of the Act sets forth specific resume notice and publication procedures required for a water rights application. The purpose of those procedures is "to give notice of the nature, scope and impact of the decree sought," which then serves to enable any interested person "to file a statement of opposition and contest the factual or legal grounds for issuance of such a decree." *S. Ute Indian Tribe v. King Consol. Ditch Co.*, 250 P.3d 1226, 1234 (Colo. 2011). While the notice requirements of the Act are generally consistent with those applicable to proceedings in rem, the procedures of the statutory adjudication process itself are unique, involving a division engineer's consultation report, a referee's investigation, discovery, and a trial to resolve contested issues involving the claimed water rights. *In re Tonko*, 154 P.3d at 407. We have therefore characterized water right adjudications as special statutory proceedings, as to which C.R.C.P.

81(a) limits the applicability of the civil rules to situations in which they are not inconsistent or in conflict with the statute. *See Groundwater Appropriators of S. Platte River Basin, Inc. v. City of Boulder*, 73 P.3d 22, 25 (Colo. 2003); *see also Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 381 (Colo. 1994) (quoting introductory note preceding Uniform Local Rules for all State Water Court Divisions).

¶12 Prior to passage of the 1969 Act, adjudications historically occurred on a piecemeal, haphazard basis. James N. Corbridge, Jr. & Teresa A. Rice, *Vranesh's Colorado Water Law* 139 (rev. ed. 1999). The 1969 Act was the General Assembly's attempt to provide a "comprehensive, integrated scheme of adjudication and tabulation of water rights." *Id.* And in this way, the uniform adjudication process promotes our water law system's objectives of security, reliability, and flexibility. *See Empire Lodge Homeowners' Ass'n*, 39 P.3d at 1147. Allowing for any other method to adjudicate one's water right would not comport with the General Assembly's intent to provide a comprehensive and specialized scheme to that end.

## III.

¶13 It is undisputed that the Trust did not file an application for an adjudication of its water rights or otherwise follow the resume notice and publication procedures required of such applications; and in the absence of such an application, the water court resolved that it lacked the jurisdiction to grant the declaratory and injunctive relief requested by the Trust. While the water court did

8

not more particularly describe in its order the nature of the jurisdictional defect it perceived, it discussed law concerning subject matter jurisdiction earlier in its ruling, and therefore the Trust characterizes and disputes its ruling as one premised on a lack of subject matter jurisdiction.

¶14 Although we have not always used the term with the same degree of precision, *see, e.g.*, *Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 38 (Colo. 1997) ("The filing of a diligence application, and notice thereof published in the water division resume, confers subject matter jurisdiction on the water court . . . ."), we have nevertheless often explained that subject matter jurisdiction concerns the court's authority to deal with the class of cases in which it renders judgment. *See, e.g.*, *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 636 (Colo. 1987). By statute, water courts have exclusive subject matter jurisdiction over "water matters," § 37-92-203(1), C.R.S. (2019), and we have previously noted that a water matter is implicated by the claim of a right to *use* water acquired by appropriation, as distinguished from the *ownership* of a water right. *Humphrey v. Sw. Dev. Co.*, 734 P.2d 637, 640–41 (Colo. 1987). Because the Trust claimed a right to use water acquired by appropriation, it clearly raised a water matter, over which the water court had subject matter jurisdiction.

¶15 By the same token, in the absence of notice published in the water division resume, the water court nevertheless lacked the jurisdiction to adjudicate a water

9

right in favor of the Trust. Rather than "subject matter" jurisdiction, however, the jurisdictional shortcoming is more appropriately categorized as a matter of "personal" jurisdiction. *See generally* 4 Charles A. Wright et al., *Federal Practice and Procedure* § 1063 (4th ed. 2019) ("The concept[] of subject matter jurisdiction . . . should be distinguished from the principle that the court must have jurisdiction over the defendant's person, his property, or the res that is the subject of the suit."). Both this court and the United States Supreme Court have remarked that water adjudications, although unique, are in the nature of in rem proceedings, *Nevada v. United States*, 463 U.S. 110, 143–44 (1983); *S. Ute Indian Tribe*, 250 P.3d at 1234; and just as with Fed. R. Civ. P. 12(b)(2), we conclude that C.R.C.P. 12(b)(2) is the more appropriate vehicle for challenging adequacy of notice, even for in rem proceedings. *See* Wright, *supra*, § 1351 ("Although Rule 12(b)(2) only refers to 'lack of personal jurisdiction,' the provision presumably is sufficiently elastic to embrace a defense or objection that the district court lacks in rem or quasi-in-rem jurisdiction, admittedly a subject that rarely arises in contemporary practice."). To the extent the Trust's pleadings are properly construed to seek a determination of water right with regard to the Trust's use of water from the Youngs' springs, the water court lacked jurisdiction over the res of the action.

¶16    The Trust asserts, however, that it does not seek the determination of a water right at all. Rather than an adjudication of its right to use a specific amount of

10

water, in priority, from a designated structure, capable of being legally enforced through the water administration system, the Trust asserts that it merely seeks a declaration that it has a right to use water rising on the Youngs' property that is superior to any right of the Youngs to interfere with that use. While we have elsewhere suggested that some "water matters," over which the water court has subject matter jurisdiction, might require personal service because of the one-on-one nature of the claim, *see S. Ute Indian Tribe*, we have never suggested that priority over another's use of water could be established without having first adjudicated a water right according to the resume notice process prescribed by the 1969 Act.

¶17    In *Southern Ute Indian Tribe*, despite holding that personal service is required in only limited circumstances in water cases and that the application for declaratory review in that case actually involved a "determination of water right," subject to the statutory resume notice process, we offered that some instances of "party versus party litigation in water court . . . come under the personal service requirements of C.R.C.P. 4 and 19," including "injunction and declaratory judgment actions where relief is sought against a named party." 250 P.3d at 1235. The examples we gave to support that proposition, as we noted at the time, however, were all very limited claims concerning the ownership or administration of already adjudicated water rights, and most did not mention or deal with service

11

requirements at all. *See N. Sterling Irrigation Dist. v. Simpson*, 202 P.3d 1207 (Colo. 2009) (declaratory judgment action against state engineer regarding administration of "the one fill rule"); *Archuleta v. Gomez*, 200 P.3d 333 (Colo. 2009) (injunctive relief involving ownership of existing water right through adverse possession); *City of Golden v. Simpson*, 83 P.3d 87 (Colo. 2004) (motion to temporarily restrain state engineer from barring further diversions in breach of agreement among water rights holders); *Gardner v. State*, 614 P.2d 357 (Colo. 1980) (proceeding to determine whether adjudicated water right should be considered abandoned). Our statement in *Southern Ute Indian Tribe* was therefore not intended, nor could it be reasonably understood, to sanction a failure to comply with the statutory resume notice procedure for the determination of a water right by merely requesting declaratory or injunctive relief against a particular party.

¶18 While appropriation by diverting a specific amount of water and applying it to a beneficial purpose may entitle the appropriator to adjudicate a water right, according to the provisions of the 1969 Act, and may even have consequences for priority of use among water rights adjudicated in the same year, it cannot afford a priority of use, even with respect to another specific user, without formal adjudication of a water right, in a specific amount, for a specific purpose, and relative to a specific structure for diversion. To the extent the Trust's first claim for relief seeks to enjoin the Youngs from interfering with its use of water from

12

springs rising on the Youngs' property, without an adjudicated right to the use of that water, as the Trust asserts, it simply fails to state a claim for relief the water court is empowered to grant.

**IV.**

¶19 The Youngs request trial and appellate attorney fees under section 13-17-201, C.R.S. (2019), for successfully defending this action.

¶20 Given the nature of the proceedings below, we decline to address the Youngs' entitlement to their fees incurred specifically at trial. After the water court entered judgment dismissing the Trust's complaint and after the Trust filed its notice of appeal, the Youngs filed a motion with the water court for attorney fees and costs. The water court deferred ruling on that motion pending the outcome of this appeal. As the court of appeals has previously held, such an issue remains within the jurisdiction of the trial court. *See Koontz v. Rosener*, 787 P.2d 192, 199 (Colo. App. 1989) ("[T]he filing of the notice of appeal of the merits judgment did not divest the trial court of its continuing jurisdiction to determine the issues posed by the cost bills and requests for attorney fees."); *Roa v. Miller*, 784 P.2d 826, 830 (Colo. App. 1989) ("[A] trial court may address the issue of the award of attorney fees for services rendered in connection with the underlying litigation on a post-trial basis . . . ."). Therefore we do not reach the Youngs' entitlement to fees that may have been incurred below. *See Kreft v. Adolph Coors Co.*, 170 P.3d 854, 859

13

(Colo. App. 2007) (holding that the issue of attorney fees under section 13-17-201 was "not ripe for appellate review" because that issue was still pending before the trial court).

¶21 We can conclude, however, that the Youngs are entitled to their attorney fees incurred on appeal under section 13-17-201 and C.A.R. 39.1.

¶22 Section 13-17-201[1] mandates an award of attorney fees to a prevailing defendant where the plaintiff's tort action is dismissed under C.R.C.P. 12(b). *Crandall v. City of Denver*, 238 P.3d 659, 663 (Colo. 2010). In determining whether an action lies in tort, we concur with prior determinations of the court of appeals that the analysis should focus on the manner in which the claims are pleaded. *See Castro v. Lintz*, 2014 COA 91, ¶ 16, 338 P.3d 1063, 1067. Where a plaintiff has pleaded both tort and non-tort claims, the question of statutory attorney fees

---

[1] The statute provides, in part:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

§ 13-17-201.

properly turns on the question "whether the essence of the action was one in tort." *Id.*, 338 P.3d at 1068.

¶23 Here, the Trust's claims requesting declaratory and injunctive relief and damages were "occasioned by" the Youngs' alleged interference and trespass against the Trust's water and ditch rights. Among other particulars, the Trust's complaint alleged "interference with [the Trust's] right to use natural spring water" and "trespass upon and damage to [the Trust's] ditch easements." Those allegations clearly alleged tortious conduct on behalf of the Youngs. *See Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1238 (Colo. 2001) (concluding that trespass is committed for nonconsensual, unilateral alterations of ditches because they jeopardize valuable vested property rights both in the ditch easement and the water rights exercised by means of the ditch). Although two of the Trust's claims for relief sought declaratory judgments of the Trust's water and ditch rights, those claims only attempted to establish the property rights for which relief could lie from the Youngs' alleged tortious conduct. Therefore, the "essence" of the Trust's action sounded in tort, *see Castro*, ¶ 16, 338 P.3d at 1068, and because we affirm the water court's dismissal of that action pursuant to C.R.C.P. 12(b), the Youngs are statutorily entitled to their appellate attorney fees.

¶24 We direct the water court on remand to determine the amount of those fees. *See* C.A.R. 39.1.

15

## V.

¶25 Because the water court could not provide the Trust's requested relief without the Trust's first having adjudicated its water rights in accordance with section 37-92-302, the water court's dismissal of the Trust's complaint is affirmed. Because the Youngs have successfully defended the dismissal of this tort action on appeal, they are statutorily entitled to their reasonable appellate attorney fees, and the case is remanded to the water court for a determination of the amount of those fees.