961 P.2d 1092 (1998)
In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997-1998 # 105 (PAYMENTS BY CONSERVATION DISTRICT TO PUBLIC SCHOOL FUND AND SCHOOL DISTRICTS).
Bufford RICE and Richard MacRavey, Petitioners,
v.
Jim BRANDON and John Berry, Respondents, and
Victoria Buckley, Rebecca Lennahan and Richard Westfall, Title Setting Board.
In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997-1998 # 102 (BOARD OF DIRECTORS, RIO GRANDE WATER CONSERVATION DISTRICT).
Bufford RICE and Richard MacRavey, Petitioners,
v.
Jim BRANDON and John Berry, Respondents, and
Victoria Buckley, Rebecca Lennahan and Richard Westfall, Title Setting Board.
In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997-1998 # 103 (REFUND TO TAXPAYERS BY CONSERVATION DISTRICT).
Bufford RICE and Richard MacRavey, Petitioners,
v.
Jim BRANDON and John Berry, Respondents, and
Victoria Buckley, Rebecca Lennahan and Richard Westfall, Title Setting Board.
Nos. 98SA226, 98SA227 and 98SA228.
Supreme Court of Colorado, En Banc.
July 6, 1998.
*1094 Issacson, Rosenbaum, Woods & Levy, P.C., Mark G. Grueskin, Melissa K. Thompson, Hill & Robbins, P.C., David Robbins, Denver, for Petitioners.
John Berry, Hale Hackstaff Tymkovich ErkenBrack & Shih, L.L.C., Timothy M. Tymkovich, Stephen ErkenBrack, Denver, for Respondents.
Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Title Board.
Carlson, Hammond & Paddock, L.L.C., William A. Paddock, Mary Mead Hammond, Denver, for Amicus Curiae of the Rio Grande Water Users Association.
PER CURIAM.
We have consolidated these three ballot title cases because they involve the same parties and all relate to the Rio Grande Water Conservation District. The petitioners are registered electors who brought these original proceedings pursuant to section 1-40-107(2), 1 C.R.S. (1997), to review the actions taken by the initiative title setting board (the Board) in fixing the title, ballot title and submission clause, and summary (collectively, "titles and summary")[1] for: (1) a proposed constitutional amendment designated "1997-98 # 105" (Payments by Conservation District to Public School Fund and School District Initiative) (No. 98SA226); (2) a proposed statutory amendment designated "1997-98 # 102" (Board of Directors, Rio Grande Water Conservation District Initiative) (No. 98SA227); and (3) a proposed statutory amendment designated "1997-98 # 103" (Refund to Taxpayers by Conservation District) (No. 98SA228). We hold that (1) the initiative designated "1997-98 # 105" does not violate the single-subject requirement of the Colorado Constitution; and (2) the titles and summaries set for the three proposed initiatives are not unfair or misleading, and their fiscal impact statements are adequate. We therefore approve the action of the Board in all three cases.

I. No. 98SA226
Initiative "1997-98 # 105" would amend article XVI of the Colorado Constitution by adding a new section.[2] It would require the *1095 Rio Grande Water Conservation District to pay a total of $40 per acre-foot of water pumped in the past and in the future from aquifers under state trust lands for the use of the Closed Basin Project.

A.
The petitioners first assert that the Board should not have set the titles and summary because the initiative encompasses more than one subject. Article V, section 1(5.5) of the Colorado Constitution, provides:
No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.
The single-subject requirement limits the scope of an initiative to a single subject, which subject must be clearly expressed in its title. See § 1-40-106.5(1)(a), 1 C.R.S. (1997).
The requirement that an initiative be limited to a single subject is intended to ensure that each proposal depends upon its own merits for passage. § 1-40-106.5(1)(e)(I), 1B C.R.S. (1994 Supp.); see also In re House Bill No. 1353, 738 P.2d 371, 372 (Colo.1987) (interpreting the single subject requirement for bills). In furtherance of this purpose, the single subject requirement forbids the joining of "incongruous subjects in the same measure." § 1-40-106.5(1)(e)(I).
In order to constitute more than one subject under our caselaw pertaining to bills, the text of the measure must relate to more than one subject and it must have at least two distinct and separate purposes which are not dependent upon or connected with each other. Thus, if the initiative tends to effect or to carry out one general object or purpose, it is a single subject under the law.
In re Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076, 1078 (Colo.1995).
The Closed Basin Project is a reclamation project in the San Luis Valley authorized by the Reclamation Project Authorization Act of 1972.
The project was designed to withdraw water from the unconfined aquifer of the Closed Basin and deliver the water to the Rio Grande River. Under normal conditions, water that flows into the basin is collected in a sump area that is separated from the Rio Grande River drainage by a natural hydraulic barrier at the southern boundary of the Closed Basin. Once trapped there, much of the water is lost to evaporation and evapotranspiration.
American Water Dev., Inc. v. City of Alamosa, 874 P.2d 352, 373 (Colo.1994) (footnote omitted).
The goal of the Closed Basin project is to lower the water table in the sump area by approximately two feet through the construction and operation of over one-hundred shallow wells, and to reduce water *1096 losses to evaporation and evapotranspiration. Water salvaged from the sump area is to be delivered to the Rio Grande River to help meet Colorado's obligations to New Mexico and Texas under the Rio Grande Compact. See Rio Grande Compact, P.L. No. 96, 53 Stat. 785 (1939); § 37-66-101, 15 C.R.S. (1973).
Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist., 734 P.2d 627, 629 (Colo.1987). Initiative "1997-98 # 105" would assess substantial fees from the Rio Grande Water Conservation District and irrigators for past, present, and future use of water from beneath state trust lands for the Closed Basin Project. The funds would be applied to the benefit of the state's public school fund and the school districts in Water Division 3.
The proponents assert that the initiative concerns "financing public schools from fees paid for water pumped from beneath state trust lands. The state trust lands were given to the state for the purpose of funding public schools and other dedicated purposes. Requiring the District to pay for the water it pumps from beneath the state trust lands furthers this goal."
The school fund consists of the proceeds from such lands "as have heretofore been, or may hereafter, be granted to the state by the general government for educational purposes; all estates that may escheat to the state; also all other grants, gifts or devises that may be made to this state for educational purpose." Colo. Const. art. IX, § 5.[3]
Although the Initiative comprises two steps: assessing fees upon water pumped from beneath trust lands and then allocating those fees for school financing, we do not view those two steps as comprising two subjects. The theme of the purpose of state trust lands and the educational recipient provides a unifying thread.[4]

B.
The petitioners also raise the following objections to the titles and summary as set by the Board: (1) the titles and summary are misleading because they entirely omit any statement of the effect of the measure on the two designated beneficiaries of the fund, i.e., the public school fund and the school districts in Water Division 3; (2) the fiscal impact statement is misleading, in that it grossly underestimates the documented costs to the conservation district from this measure; (3) the fiscal impact statement is misleading because it fails to state which taxpayers, either statewide or only within Water District 3, would receive a refund of fees paid under the initiative; and (4) the titles and summary are misleading because they omit information about the proponents' overall scheme which is crucial for voter understanding of this initiative.
We disagree. In a proceeding of this kind, the scope of our review
is limited to ensuring that "the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board." In re Proposed Initiative on *1097 Sch. Pilot Program, 874 P.2d [1066,] 1070 [(Colo.1994)] (citations omitted).
In conducting such review we will engage in all legitimate presumptions in favor of the propriety of the Board's actions. In re Proposed Initiative "Auto. Ins. Coverage", 877 P.2d 853, 856 (Colo.1994). We do not address the merits of a proposed initiative, nor do we interpret its language or predict its application if adopted by the electorate. In re Petition on Campaign and Political Fin., 877 P.2d 311, 313 (Colo. 1994).
In re Proposed Petitions, 907 P.2d 586, 590 (Colo.1995). In addition:
The summary must ordinarily include a fiscal impact statement in order to inform the electorate of the fiscal implications of the proposal. The Board is vested with discretion regarding how to best describe the fiscal impact without creating prejudice for or against the proposal.
In re Proposed Initiative on "Trespass Streams With Flowing Water.", 910 P.2d 21, 26 (Colo.1996) (citations omitted).
Under these standards, we conclude that: (1) the titles and summary are not misleading because they identify the uncertainty of the effect of the measure by noting that "it is likely that, over the next several years, those payments or equivalent amounts could not be retained but would instead have to be distributed to taxpayers as surplus revenue under the "Taxpayers' Bill of Rights," article X, section 20 of the Colorado Constitution." The information was based on the report submitted to the Board by the Office of State Planning and Budgeting (OSPB).
(2) The fiscal impact statement also adequately describes the impact on the conservation district. "[T]his measure would impose direct costs upon the Rio Grande Water Conservation District and its irrigators of up to $1,040,000 per year (based on 1997 production of 39,000 acre-feet, of which approximately 2/3 were pumped from beneath state trust lands) plus a one-time charge of $5,707,000 for water pumped prior to 1998." The Board properly declined to speculate on the conservation district's obligation to fund water use for fish and wildlife purposes as required under federal law. Moreover, the Board's statement regarding litigation costs is adequate: "This measure could have a fiscal impact at the state level from litigation costs incurred in defending the measure against legal challenges. This cost would range from zero (if no lawsuits are filed) to approximately $350,000."
(3) The failure of the titles and summary to specify which taxpayers would receive a refund if one is necessary does not render it confusing. As we said in In re 1997-1998 # 75, 960 P.2d 672, 674 (Colo. 1998): "If and when a refund is appropriate, the General Assembly, not the Board or this court, will determine who receives it. The fiscal impact statement, therefore, adequately describes the general proposition that a taxpayer refund may be implicated."
(4) Finally, the Board's failure to include in the titles and summary a reference to other apparently related proposed initiatives involving the Rio Grande Water Conservation District does not make it misleading. Many of the proposed initiatives have been withdrawn by the proponents. The Board does not know whether any of the proposed initiatives that have not been withdrawn will ultimately appear on the ballot at the time they set titles and summary.
Accordingly, we affirm the action of the Board in setting the titles and summary for proposed initiative "1997-98 # 105."

II. No. 98SA227
Proposed initiative "1997-98 # 102" would add a new section to article 48 of title 37 of the Colorado Revised Statutes.[5] The titles *1098 and summary set by the Board for this initiative are set out in an appendix to this opinion. The measure would amend the statutes governing the Rio Grande Water Conservation District and would require that the members of the board of directors of the conservation district, who are currently appointed by the county commissioners of the counties in the district, see XX-XX-XXX(1), 10 C.R.S. (1997), be elected. It would also increase a director's term of service from three to four years; it provides for staggered terms, and imposes certain qualifications on those who seek election to the board.
The petitioners challenge the titles and summary set by the Board as follows: (1) the titles and summary are misleading because they do not mention a provision in the initiative's text the petitioners claim will effectively insulate the measure from legislative review and amendment; (2) they are misleading and inaccurate because they misstate a key provision of the initiative; (3) the titles and summary omit information about the proponent's overall scheme which is crucial for voter understanding of the initiative; (4) the fiscal statement is incomplete and inaccurate because the Board omitted any estimate of the costs for elections through the year 2013; and (5) the proponents may not circulate a petition for signature until the titles and summary have been fixed and determined.
(1) The titles and summary do not refer to the subsection of the proposed initiative that provides: "(2) THIS SECTION WAS ADOPTED BY A VOTE OF THE PEOPLE AT THE GENERAL ELECTION IN 1998." The petitioners claim that the proponents intend these words to direct legislators not to tinker with the provision. The petitioners indicate that there was testimony before the Board to indicate that the general assembly is reluctant to make changes to a statutory amendment enacted by the people. The Board is vested with broad discretion in setting the titles and summary and could have reasonably concluded that the inclusion of this subsection of the proposed initiative was unnecessary. The effect that this rather peripheral provision might have on the general assembly if the measure is adopted is speculative at best. The Board did not abuse its discretion in omitting it from the titles and summary.
(2) The titles and summary do not misstate a key provision of the initiative. *1099 The text of the initiative provides in part: "ANY VACANCY SHALL BE FILLED BY APPOINTMENT BY THE REMAINING MEMBERS OF THE BOARD." (Emphasis added.) The corresponding part of the summary states: "Other provisions of this initiative... provide for the filling of any vacancies which may occur from time to time by appointment of the remaining members of the board." (Emphasis added.) In the context of the titles and summary, we conclude that the use of the word "of" in the summary, rather than "by," does not create confusion in how directors are selected for vacancies on the board.
(3) In No. 98SA226 above, we have already concluded that the omission of a discussion of the proponents' overall package of initiatives was not error.
(4) The fiscal statement is not incomplete or inaccurate because the Board omitted any long-range estimate of the costs for elections through the year 2013. The fiscal impact statement provides:
The fiscal impact of this proposal results from the cost of conducting elections, which would be borne by the Rio Grande Water Conservation District. The total cost of each election is predicted to range from approximately $47,000 to approximately $73,000, depending on whether mail ballots or polling places are used and whether the eligible electors include the owners of taxable property. No fiscal impact at the state level is expected.
We find that the Board was not required to provide a further elaboration of the costs through the year 2013, even though such an estimate was presented in a letter from the Department of Local Affairs. From the record before us, we discern no magic in the year 2013. The Board had discretion to omit this estimate from the fiscal impact statement.
(5) The petitioners ask the court to hold that the proponents may not circulate a petition for signature until the titles and summary have been fixed and determined. This issue, however, is not within the narrow scope of our review of the Board's actions under section 1-40-107(2). See In re Proposed Petitions, 907 P.2d 586, 590 (Colo. 1995).
We therefore affirm the action of the Board in fixing the titles and summary for proposed initiative "1997-98 # 102."

III. No. 98SA228
Proposed initiative "1997-98 # 103" seeks to add a new subsection (5) to section 37-48-107, 10 C.R.S. (1997).[6] It would require the Rio Grand Water Conservation District's board of directors to refund all monies received from court judgments between January 1, 1985, and July 1, 1995, for attorney fees, court costs, and interest. The refund would go to taxpayers within the conservation district in an amount proportionate to the taxpayer's tax liability as of December 31, 1998.
The petitioners claim that the titles and summary are deficient in the following ways: (1) they omit information about the proponent's overall scheme; (2) the use of the term "refund" in the titles and summary is misleading because it implies that the measure would give back monies to taxpayers who paid taxes; (3) "refund" is also misleading because it erroneously suggests that taxpayers will receive a payment that bears *1100 some resemblance to the taxes they actually paid to the district; (4) "refund" implies that the conservation district will give back taxes paid by taxpayers when the funds actually come from judicial awards; (5) "refund to taxpayers" is a prohibited catch phrase; and (6) the titles and summary are misleading because they do not mention a provision in the initiative's text the petitioners claim will effectively insulate the measure from legislative review.
We have already rejected the contention the title and summary must describe all of the proponents' interrelated initiatives.
As to the second, third and fourth objections, we hold that the use of the term "refund" by the Board in the titles and summary is not misleading. The term "refund" is used in the text of the proposed initiative itself. Insofar as its use may be characterized as inaccurate when read in isolation, the context in which the term is used in the titles and summary, and in the proposed initiative itself, adequately clarifies the special sense in which "refund" is used.
As to the fifth objection, we hold that "Refund to taxpayers" is not inherently a prohibited catch phrase. A "catch phrase" consists of "words which could form the basis of a slogan for use by those who expect to carry out a campaign for or against an initiated constitutional amendment." In re Proposed Initiative on Casino Gaming, 649 P.2d 303, 308 (Colo.1982). The existence of a slogan or catch phrase is determined in the context of contemporary political debate. See In re Workers Comp Initiative, 850 P.2d 144, 147 (Colo.1993). The petitioners fail to provide any convincing evidence that "refund to taxpayers" constitutes a catch phrase beyond the comparison to an issue before the general assembly in the last session concerning adherence to Amendment 1 involving the refund of excess revenues. The deterioration of a group of terms into an impermissible catch phrase is an imprecise process. We must be careful to recognize, but not create, catch phrases, and we do not now view "refund to taxpayers" as such a phrase. We therefore conclude that the Board's title does not contain an impermissible catch phrase. See In re "Amend Tabor No. 32", 908 P.2d 125, 130 (Colo.1995).
The petitioners' last claim is that the titles and summary are misleading because they fail to mention a provision in the initiative's text the petitioners claim will effectively insulate the measure from legislative review. We addressed this issue in No. 98SA227 above.
Accordingly, we affirm the action of the Board in fixing the titles and summary for proposed initiative "1997-98 # 103."
HOBBS, J., dissents.

APPENDIX

PROPOSED INITIATIVE "1997-98 # 105"[1]
The title as designated and fixed by the Board is as follows:
AN AMENDMENT TO THE COLORADO CONSTITUTION REQUIRING THE RIO GRANDE WATER CONSERVATION DISTRICT, WHICH IS LOCATED IN WHOLE OR IN PART IN CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, AND SAGUACHE COUNTIES, TO PAY FEES FOR ALL WATER THAT HAS BEEN, IS BEING, OR WILL IN THE FUTURE BE PUMPED FROM AQUIFERS UNDERLYING STATE TRUST LANDS PURSUANT TO WATER DECREE W-3038 IN WATER DIVISION 3 (INCLUDING ALL OR PART OF CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, SAGUACHE, AND COSTILLA COUNTIES) FOR PURPOSES OF THE "CLOSED BASIN PROJECT", AND, IN CONNECTION THEREWITH, SETTING SUCH FEES AT THIRTY DOLLARS PER ACRE-FOOT, PAYABLE TO THE STATE'S PUBLIC SCHOOL FUND, AND TEN DOLLARS PER ACRE-FOOT, PAYABLE TO THE SCHOOL DISTRICTS IN WATER DIVISION 3, BASED UPON THE STATE DEPARTMENT OF EDUCATION'S STUDENT COUNT FOR SUCH DISTRICTS; DIRECTING THE STATE AUDITOR TO DETERMINE THE *1101 AMOUNTS OF SUCH FEES PAYABLE EACH YEAR AND REQUIRING PAYMENT OF SUCH AMOUNTS WITHIN THIRTY DAYS AFTER SUCH DETERMINATION, SUBJECT TO INTEREST AT EIGHTEEN PERCENT ON LATE PAYMENTS; REQUIRING THE RIO GRANDE WATER CONSERVATION DISTRICT TO ASSESS THOSE IRRIGATORS WITH WATER RIGHTS IN THE RIO GRANDE RIVER, IN PROPORTION TO THEIR WATER RIGHT, AN AMOUNT EQUAL TO THE AMOUNT OF WATER USED AND ATTRIBUTABLE TO THE WATER PUMPED FROM BENEATH SUCH STATE TRUST LANDS; AND PROVIDING THAT MONIES PAID TO THE SCHOOL DISTRICTS IN WATER DIVISION 3 SHALL BE IN ADDITION TO MONIES MADE AVAILABLE FOR PUBLIC SCHOOL CHILDREN AND SHALL NOT BE CONSIDERED BY THE GENERAL ASSEMBLY WHEN DETERMINING SUCH AMOUNT.
The ballot title and submission clause as designated and fixed by the Board is as follows:
SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION REQUIRING THE RIO GRANDEWATER CONSERVATION DISTRICT, WHICH IS LOCATED IN WHOLE OR IN PART IN CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, AND SAGUACHE COUNTIES, TO PAY FEES FOR ALL WATER THAT HAS BEEN, IS BEING, OR WILL IN THE FUTURE BE PUMPED FROM AQUIFERS UNDERLYING STATE TRUST LANDS PURSUANT TO WATER DECREE W-3038 IN WATER DIVISION 3 (INCLUDING ALL OR PART OF CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, SAGUACHE, AND COSTILLA COUNTIES) FOR PURPOSES OF THE "CLOSED BASIN PROJECT", AND, IN CONNECTION THEREWITH, SETTING SUCH FEES AT THIRTY DOLLARS PER ACRE-FOOT, PAYABLE TO THE STATE'S PUBLIC SCHOOL FUND, AND TEN DOLLARS PER ACRE-FOOT, PAYABLE TO THE SCHOOL DISTRICTS IN WATER DIVISION 3, BASED UPON THE STATE DEPARTMENT OF EDUCATION'S STUDENT COUNT FOR SUCH DISTRICTS. DIRECTING THE STATE AUDITOR TO DETERMINE THE AMOUNTS OF SUCH FEES PAYABLE EACH YEAR AND REQUIRING PAYMENT OF SUCH AMOUNTS WITHIN THIRTY DAYS AFTER SUCH DETERMINATION, SUBJECT TO INTEREST AT EIGHTEEN PERCENT ON LATE PAYMENTS; REQUIRING THE RIO GRANDE WATER CONSERVATION DISTRICT TO ASSESS THOSE IRRIGATORS WITH WATER RIGHTS IN THE RIO GRANDE RIVER, IN PROPORTION TO THEIR WATER RIGHT, AN AMOUNT EQUAL TO THE AMOUNT OF WATER USED AND ATTRIBUTABLE TO THE WATER PUMPED FROM BENEATH SUCH STATE TRUST LANDS; AND PROVIDING THAT MONIES PAID TO THE SCHOOL DISTRICTS IN WATER DIVISION 3 SHALL BE IN ADDITION TO MONIES MADE AVAILABLE FOR PUBLIC SCHOOL CHILDREN AND SHALL NOT BE CONSIDERED BY THE GENERAL ASSEMBLY WHEN DETERMINING SUCH AMOUNT?
The summary prepared by the Board is as follows:
This measure enacts an amendment to the Colorado Constitution requiring the Rio Grande Water Conservation District to pay fees totalling $40 per acre-foot for water that has been pumped, is being pumped, or will be pumped in the future from aquifers underlying state trust lands for purposes of the "Closed Basin Project", a reclamation project established by federal law in the San Luis Valley of southern Colorado for the stated purpose of assisting Colorado in meeting its water delivery obligations to downstream states under the Rio Grande River Compact.
Specifically, the proposal imposes a fee of $30 per acre-foot, payable to the state's public school fund, and $10 per acre-foot, payable to the school districts in Water Division 3 in proportion to their student count, on water pumped from aquifers underlying state trust lands for the project.
*1102 The measure requires the state auditor to determine, on July 1, 1999, and annually thereafter, the amounts of such fees payable each year. All amounts due for years prior to 1998 would be so determined on July 1, 1999. The measure requires that the amounts so determined be paid within 30 days after such determination, subject to interest at 18% on late payments and also requires the Rio Grande Water Conservation District to assess those irrigators with water rights in the Rio Grande River, in proportion to their water right, an amount equal to the amount of water used and attributable to the water pumped from beneath state trust lands for the project. Finally, the proposal provides that monies paid to the school districts in Water Division 3 shall be in addition to monies made available for public school children and shall not be considered by the general assembly when determining such amount.
This measure could have a fiscal impact at the state level resulting from litigation costs incurred in defending the measure against legal challenges. This cost would range from zero (if no lawsuits are filed) to approximately $350,000. Although the measure would require the Rio Grande Water Conservation District to make substantial payments to the public school fund, it is likely that, over the next several years, those payments or equivalent amounts could not be retained but would instead have to be distributed to taxpayers as surplus revenue under the "Taxpayers' Bill of Rights", article X, section 20 of the Colorado Constitution.
At the local level, this measure would impose direct costs upon the Rio Grande Water Conservation District and its irrigators of up to $1,040,000 per year (based on 1997 production of 39,000 acre-feet, of which approximately 2/3 were pumped from beneath state trust lands) plus a one-time charge of $5,707,000 for water pumped prior to 1998.
Hearing adjourned, May 20, 1998, 5:22 p.m.
May 29, 1998
 Buford Rice and Richard MacRavey Motion for Rehearing Granted in Part, Denied in Part.
Hearing adjourned 12:03 p.m.

PROPOSED INITIATIVE "1997-98 # 102"[1]
The title as designated and fixed by the Board is as follows:
AN AMENDMENT TO THE COLORADO REVISED STATUTES REQUIRING ELECTION OF THE BOARD OF DIRECTORS OF THE RIO GRANDE WATER CONSERVATION DISTRICT, WHICH IS LOCATED IN WHOLE OR IN PART IN CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, AND SAGUACHE COUNTIES, AND, IN CONNECTION THEREWITH, SPECIFYING THAT TWO OF SUCH DIRECTORS SHALL REPRESENT EACH OF THE COUNTIES OF CONEJOS, ALAMOSA, RIO GRANDE, AND SAGUACHE AND ONE SHALL REPRESENT MINERAL COUNTY; REQUIRING THAT ANY PERSON SEEKING TO BE SUCH A DIRECTOR BE A REGISTERED ELECTOR RESIDING WITHIN THE DISTRICT AND THE COUNTY THEY SEEK TO REPRESENT; INCREASING THE TERM OF SERVICE OF SUCH DIRECTORS FROM THREE YEARS TO FOUR YEARS TO BE ELECTED FOR STAGGERED TERMS AT BIENNIAL ELECTIONS; DISQUALIFYING DIRECTORS SERVING ON THE BOARD ON JANUARY 1, 1999, FOR ELECTION FOR A PERIOD OF FOUR YEARS AFTER THIS MEASURE TAKES EFFECT; AND PROVIDING FOR THE FILLING OF VACANCIES BY APPOINTMENT OF THE REMAINING MEMBERS OF THE BOARD.
The ballot title and submission clause as designated and fixed by the Board is as follows:
SHALL THERE BE AN AMENDMENT TO THE COLORADO REVISED STATUTES REQUIRING ELECTION OF THE BOARD OF DIRECTORS OF THE RIO GRANDE WATER CONSERVATION DISTRICT, *1103 WHICH IS LOCATED IN WHOLE OR IN PART IN CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, AND SAGUACHE COUNTIES, AND, IN CONNECTION THEREWITH, SPECIFYING THAT TWO OF SUCH DIRECTORS SHALL REPRESENT EACH OF THE COUNTIES OF CONEJOS, ALAMOSA, RIO GRANDE, AND SAGUACHE AND ONE SHALL REPRESENT MINERAL COUNTY; REQUIRING THAT ANY PERSON SEEKING TO BE SUCH A DIRECTOR BE A REGISTERED ELECTOR RESIDING WITHIN THE DISTRICT AND THE COUNTY THEY SEEK TO REPRESENT; INCREASING THE TERM OF SERVICE OF SUCH DIRECTORS FROM THREE YEARS TO FOUR YEARS TO BE ELECTED FOR STAGGERED TERMS AT BIENNIAL ELECTIONS; DISQUALIFYING DIRECTORS SERVING ON THE BOARD ON JANUARY 1, 1999, FOR ELECTION FOR A PERIOD OF FOUR YEARS AFTER THIS MEASURE TAKES EFFECT; AND PROVIDING FOR THE FILLING OF VACANCIES BY APPOINTMENT OF THE REMAINING MEMBERS OF THE BOARD?
The summary prepared by the Board is as follows:
This measure enacts an amendment to the statutes governing the Rio Grande Water Conservation District in such a way as to require election of members of the district's board of directors, who are currently appointed by the county commissioners of the counties within the district (consisting of Conejos, Alamosa, Rio Grande, Mineral, and Saguache counties). It specifies that any person seeking election to the board must be a registered elector residing within the district and the county they seek to represent, and disqualifies the directors serving January 1, 1999, for a period of four years following the effective date of the measure.
Other provisions of this initiative extend the directors' terms of office to four years from the current three-year term; specify that all counties within the district shall be represented by two directors except for Mineral county, which shall be represented by one; require the members of the board to select a president, vice-president, and any other officers from among them to serve in such capacity for one year; stagger the initial terms of the new directors; allow the current members to hold over from January 1, 1999, until the second Tuesday of March, 1999, when the new members take office; and provide for the filling of any vacancies which may occur from time to time by appointment of the remaining members of the board. The measure defines a vacancy as occurring when a director dies, resigns, or ceases to reside within the district.
The fiscal impact of this proposal results from the cost of conducting elections, which would be borne by the Rio Grande Water Conservation District. The total cost of each election is predicted to range from approximately $47,000 to approximately $73,000, depending on whether mail ballots or polling places are used and whether the eligible electors include the owners of taxable property. No fiscal impact at the state level is expected.
Hearing adjourned, May 20, 1998, 5:08 p.m.
May 29, 1998
 Burford Rice and Richard MacRavey Motion for Rehearing Granted in Part, Denied in Part
Hearing adjourned 11:30 a.m.

PROPOSED INITIATIVE "1997-98 # 103"[1]
The title as designated and fixed by the Board is as follows:
AN AMENDMENT TO THE COLORADO REVISED STATUTES REQUIRING THE BOARD OF DIRECTORS OF THE RIO GRANDE WATER CONSERVATION DISTRICT, WHICH IS LOCATED IN WHOLE OR IN PART IN CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, AND SAGUACHE COUNTIES, TO REFUND TO TAXPAYERS WITHIN SUCH DISTRICT BY JULY 1, 1999, ALL MONEYS *1104 RECEIVED BY THE DISTRICT FROM COURT JUDGMENTS ENTERED AFTER JANUARY 1, 1985, AND BEFORE JULY 1, 1995, FOR ATTORNEY FEES, COURT COSTS, AND INTEREST.
The ballot title and submission clause as designated and fixed by the Board is as follows:
SHALL THERE BE AN AMENDMENT TO THE COLORADO REVISED STATUTES REQUIRING THE BOARD OF DIRECTORS OF THE RIO GRANDE WATER CONSERVATION DISTRICT, WHICH IS LOCATED IN WHOLE OR IN PART IN CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, AND SAGUACHE COUNTIES, TO REFUND TO TAXPAYERS WITHIN SUCH DISTRICT BY JULY 1, 1999, ALL MONEYS RECEIVED BY THE DISTRICT FROM COURT JUDGMENTS ENTERED AFTER JANUARY 1, 1985, AND BEFORE JULY 1, 1995, FOR ATTORNEY FEES, COURT COSTS, AND INTEREST?
The summary prepared by the Board is as follows:
This measure enacts an amendment to the statutes governing the Rio Grande Water Conservation District to require the district's board of directors to refund to the district's taxpayers by July 1, 1999, all moneys received by the district from any past court judgment entered after January 1, 1985, and before July 1, 1995, for attorney fees, court costs, and interest. The refund to each taxpayer is required to be made by check or other negotiable instrument in an amount proportionate to the taxpayer's tax liability as established on December 31, 1998.
The fiscal impact of this proposal on the Rio Grande Water Conservation District would be approximately $1,837,000, representing the amount to be paid to taxpayers, plus $24,000, representing the cost of issuing and mailing checks, for a total of approximately $1,861,000. The proposal is not expected to have any fiscal impact on state government.
Hearing adjourned, May 20, 1998, 5:10 p.m.
May 29, 1998
 Buford Rice and Richard MacRavey Motion for Rehearing denied.
Hearing adjourned, 11:40 a.m.
Justice HOBBS dissenting:
I respectfully dissent. The majority's per curiam opinion states that the initiative comprises two steps: "assessing fees upon water pumped from beneath trust lands" and "allocating those fees for school financing." Maj. op. at 1096. However, the majority finds that these two steps have one unifying thread, creating the singular purpose of "state trust lands and the educational recipient." Id. The majority therefore finds no violation of the single subject requirement of article V, section 1(5.5) of the Colorado Constitution. The majority further rejects the opponents' contention that the titles and summary set by the Board are misleading. See id. at 1096-97.
While I agree that generation of revenue derived from the school trust for the public schools is one purpose and subject matter of this initiative, I would hold that Initiative # 105 contains a second purpose constituting a second subject matter, the mandated utilization of a locally owned water rights decree as a state trust asset. I would further hold that the summary prepared by the Board contains a material omission regarding the effect of the initiative.
While we do not construe the legal effect of an initiative proposal as if it had been adopted, we must at least characterize the proposal sufficiently to conduct review for compliance with the constitutional and statutory provisions which apply to the initiative process. See In re Initiative # 62, 961 P.2d 1077, 1082 (Colo.1998). Section 9, paragraph (1) of Initiative # 105 would amend the water provisions of article XVI of the Colorado Constitution to charge a fee of $40 per acre foot of water pumped "from beneath state trust lands pursuant to water decree W-3038 in Water Division 3," whether that water was pumped in the past, present, or future. (Emphasis added.)
W-3038 is a decree obtained by the Rio Grande Water Conservation District (District) for the Closed Basin Project (Project). *1105 The Project was designed to salvage water from a sump area for delivery into the Rio Grande River to help meet Colorado's obligations to New Mexico and Texas under the Rio Grande Compact. See Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist., 734 P.2d 627, 629 (Colo. 1987). In turn, the Project allows Colorado appropriators to exercise their water rights at times when compact delivery obligations would have intervened. The Project was constructed and has been operated in partnership with the United States Bureau of Reclamation. See id.
In Closed Basin, we upheld the finding of the water court that the water of the Closed Basin is a "natural surface stream system subject to appropriation." Id. at 637. Article XVI, section 5 of the Colorado Constitution states that waters of the natural stream are the property of the public and are subject to appropriation. Thus, the water which Initiative # 105 seeks to use for the state trust is not a state trust asset. Rather, the appropriation of this water pursuant to a valid water court decree is a vested property right of the District for use through the Project.
An initiative contains more than one subject matter if the text "relates to more than one subject and if the measure has at least two distinct and separate purposes which are not dependent upon or connected with each other." See In re Proposed Petition, 907 P.2d 586, 590 (Colo.1995). The second purpose and subject matter of Initiative # 105 is to establish that water beneath state trust lands is a state trust asset and to utilize the decree in W-3038 to produce income for the public schools. This income is not a tax under the initiative, but, rather, a fee. A fee is generally a price for service or for renting property owned by another. To charge a fee, a person must have a legal relationship to the person who owes the fee. Initiative # 105 proposes to establish this relationship by treating tributary water under state trust lands as a state trust asset.
The single subject requirement is designed to protect the voters from fraud and surprise. See In re Initiative 1997-98 # 30, 959 P.2d 822, 825 (Colo.1998). It also prevents the proponents of an initiative from joining multiple subjects into a single initiative in the hope of attracting support from various factions which may have different or even conflicting interests. See In re Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076, 1079 (Colo.1995).
Here, the proponents of Initiative # 105 clearly hope to gain the support of those in favor of increasing public school funding. Voters attracted by a sentiment of aiding the public schools may not be aware that this initiative also converts water heretofore subject to appropriation into a state trust asset.
The majority also rejects the opponents' argument that the titles and summary affixed by the Board for Initiative # 105 are misleading. See maj. op. at 1096-97. We have stated that we will reverse the Board's action in preparing the titles and summary if they contain a significant omission, misstatement, or misrepresentation. See In re Initiative #62, 961 P.2d at 1082. Here, the summary fails to alert the voters that the initiative would compromise Colorado's constitutional and statutory scheme for acquisition of water rights, in place for over one hundred years; I would hold this to be a material omission.
The Colorado Constitution states that "[t]he water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided." Art. XVI, § 5. Colorado's statutory scheme for appropriating and acquiring rights in this public resource is set forth in the Water Right Determination and Administration Act of 1969. See §§ 37-92-101 to -602, 10 C.R.S. (1997). Thus, the constitution and statutes of this state make clear that waters of a natural stream are not owned by the overlying landowner, but must be appropriated and applied to a beneficial use before any property right can be claimed. See Chatfield East Well Co., Ltd. v. Chatfield East Property Owners Ass'n, 956 P.2d 1260, 1269 (Colo.1998).
However, Initiative # 105 assumes that the water underlying school trust lands, regardless of whether it is the water of a natural stream, is a part of the trust associated with those lands, and that the trust must therefore *1106 be compensated when it is used. The summary created by the Board gives no indication to the voters that its effect is to displace a decree entered pursuant to constitutional provisions relating to the acquisition of water rights that have been in place since prior to Colorado's statehood, and I consider this to be a material omission.
Because the initiative contains two purposes and two subject matters, and because the titles and summary affixed by the Board contain a material omission, I would reverse the Title Board's action and remand the case with directions that the Title Board strike the titles and summary for Initiative # 105 and return it to its proponents.
NOTES
[1] The three titles and summaries set by the Board are attached as an appendix to this opinion.
[2] The initiative provides as follows:

Be It Enacted by the People of the State of Colorado:
Amend article XVI of the Colorado Constitution BY THE ADDITION OF A NEW SECTION to read:
Section 9. Closed Basin Projectreimbursement to state school trustpeople's declaration. (1) THE RIO GRANDE WATER CONSERVATION DISTRICT SHALL PAY TO THE PUBLIC SCHOOL FUND CREATED IN ARTICLE IX OF THIS CONSTITUTION FOR THE WATER USED IN THE CLOSED BASIN PROJECT WHICH HAS BEEN PUMPED, IS BEING PUMPED, OR WILL BE PUMPED IN THE FUTURE FROM BENEATH STATE TRUST LANDS PURSUANT TO WATER DECREE W-3038 IN WATER DIVISION 3. THE AMOUNT THE DISTRICT SHALL PAY SHALL BE THIRTY DOLLARS PER ACRE-FOOT OF WATER WHICH WATER IS REQUIRED TO MEET THE YEARLY REQUIREMENTS FOUND IN PL 92-514.
(2) IN ADDITION TO THE PAYMENT TO THE PUBLIC SCHOOL FUND, THE DISTRICT SHALL PAY TO THE SCHOOL DISTRICTS IN WATER DIVISION 3 TEN DOLLARS PER ACRE-FOOT OF WATER WHICH WATER IS REQUIRED TO MEET THE YEARLY REQUIREMENTS FOUND IN PL 92-514.
(3) ON JULY 1, 1999, AND ANNUALLY THEREAFTER, THE STATE AUDITOR SHALL DETERMINE THE AMOUNT OF MONIES OWED BY THE DISTRICT TO THE PUBLIC SCHOOL FUND AND SCHOOL DISTRICTS IN WATER DIVISION 3 FOR THE PREVIOUS YEAR. THE DISTRICT SHALL ASSESS THOSE IRRIGATORS WITH WATER RIGHTS IN THE RIO GRANDE RIVER, IN PROPORTION TO THEIR WATER RIGHT, AN AMOUNT EQUAL TO THE AMOUNT OF WATER USED AND ATTRIBUTABLE TO THE WATER WHICH HAS BEEN PUMPED FROM BENEATH SUCH STATE TRUST LANDS. THE AMOUNT OF MONIES OWED BY THE DISTRICT FOR YEARS PRIOR TO 1998, SHALL BE DETERMINED BY THE STATE AUDITOR ON JULY 1, 1999. MONIES OWED SHALL BE DEPOSITED WITH THE STATE TREASURER WITHIN THIRTY DAYS OF THE DETERMINATION OF SUCH AMOUNT BY THE STATE AUDITOR. THE AMOUNT OF MONIES TRANSFERRED TO EACH SCHOOL DISTRICT SHALL BE BASED UPON THE STATE DEPARTMENT OF EDUCATION'S STUDENT COUNT. MONIES NOT DEPOSITED WITHIN THIRTY DAYS SHALL BEAR INTEREST AT THE RATE OF EIGHTEEN PERCENT PER ANNUM.
(4) MONIES PAID TO THE SCHOOL DISTRICTS IN WATER DIVISION 3 SHALL BE IN ADDITION TO AND NOT BE CONSIDERED BY THE GENERAL ASSEMBLY WHEN DETERMINING THE AMOUNT OF MONIES IT MAKES AVAILABLE ANNUALLY FOR PUBLIC SCHOOL CHILDREN.
[3] The grants of land referred to in sections 5 and 10 of article IX are described in Colorado's Enabling Act, 1 C.R.S. (1997), which was approved by the federal government when Colorado acquired statehood. Section 7 of the Enabling Act provides that certain land within the state was granted to the "state for the support of common schools." Enabling Act § 7. Section 8 grants certain public lands to the "state for the purpose of erecting public buildings at the capital of said state, for legislative and judicial purposes, in such manner as the legislature shall prescribe." Enabling Act § 8. Other sections concern grants of land for a penitentiary, id. § 9, a state university, id. § 10, and salt springs, id. § 11. See also Enabling Act § 14 (providing that the proceeds from the sale of school lands are to constitute a "permanent school fund, the interest of which to be expended in the support of common schools"); People ex rel. Dunbar v. City of Littleton, 183 Colo. 195, 197, 515 P.2d 1121, 1121 (1973) (describing the lands granted to Colorado under section 7 of the Enabling Act as "land placed in perpetual public trust").
[4] The court does not rule on the question of this initiative's effect on water decree W3038 in Water Division 3, or its effect on any rights of the Rio Grande Water Conservation District or other water users. These issues have not been raised or argued by the parties, and invite more analysis and interpretation than is here appropriate.
[5] Proposed initiative "1997-98 # 102" provides as follows:

SECTION 1. Article 48 of title 37, Colorado Revised Statutes, 1997 Repl.Vol., is amended BY THE ADDITION OF A NEW SECTION to read:
XX-XX-XXX.5. Board of Directorselected by the people. (1)(a) ON THE FIRST TUESDAY OF MARCH 1999, AND EVERY TWO YEARS THEREAFTER, AN ELECTION SHALL BE HELD WITHIN THE DISTRICT AND IN EACH OF THE COUNTIES OF CONEJOS, ALAMOSA, RIO GRANDE, MINERAL, AND SAGUACHE FOR THE PURPOSE OF ELECTING THE BOARD OF DIRECTORS FOR THE RIO GRANDE WATER CONSERVATION DISTRICT. ANY PERSON SEEKING TO BE A DIRECTOR SHALL BE A REGISTERED ELECTOR RESIDING WITHIN THE DISTRICT AND THE COUNTY THEY SEEK TO REPRESENT. EXCEPT FOR MINERAL COUNTY WHICH SHALL HAVE ONE DIRECTOR, TWO DIRECTORS SHALL BE ELECTED FROM EACH COUNTY BY THE REGISTERED ELECTORS OF THE DISTRICT AND THAT COUNTY. THE TERM OF OFFICE FOR THE DIRECTORS OF THE INITIAL ELECTED BOARD SHALL BE FOUR YEARS FOR THE ELECTED DIRECTOR WITH THE MOST VOTES IN EACH RESPECTIVE COUNTY AND THE OTHER ELECTED DIRECTOR FROM THE SAME COUNTY SHALL SERVE FOR TWO YEARS. THE INITIAL ELECTED DIRECTOR OF MINERAL COUNTY SHALL SERVE FOR FOUR YEARS. THEREAFTER, TERMS OF OFFICE FOR MEMBERS SHALL BE FOUR YEARS. THE MEMBERS OF SAID BOARD SHALL ANNUALLY SELECT ONE OF THEIR NUMBER TO ACT AS PRESIDENT, ONE OF THEIR NUMBER TO ACT AS VICE-PRESIDENT, AND ONE OF THEIR NUMBER TO ACT IN ANY OTHER OFFICE OR OFFICES SAID BOARD MAY CREATE, EACH TO HOLD OFFICE FOR ONE YEAR. THE TERM OF OFFICE SHALL COMMENCE ON THE SECOND TUESDAY OF MARCH FOLLOWING THE ELECTION.
(b) THE OFFICE OF A DIRECTOR SHALL BECOME VACANT WHEN ANY DIRECTOR CEASES TO RESIDE WITHIN THE DISTRICT, UPON THE DEATH OF A DIRECTOR, OR THE RESIGNATION OF A DIRECTOR. ANY VACANCY SHALL BE FILLED BY APPOINTMENT BY THE REMAINING MEMBERS OF THE BOARD.
(c) THE NINE MEMBERS OF THE BOARD SERVING ON JANUARY 1, 1999, SHALL REMAIN IN OFFICE UNTIL THE NEW BOARD IS ELECTED PURSUANT TO THE PROVISIONS OF THIS SECTION. SUCH MEMBERS SHALL BE DISQUALIFIED FOR ELECTION TO THE BOARD FOR A PERIOD OF FOUR YEARS AFTER THE EFFECTIVE DATE OF THIS SECTION.
(2) THIS SECTION WAS ADOPTED BY A VOTE OF THE PEOPLE AT THE GENERAL ELECTION IN 1998.
SECTION 2. Repeal. Section 37-48-103, Colorado Revised Statutes, is repealed effective the second Tuesday of March, 1999.
[6] Proposed initiative "1997-98 # 103" provides:

Be it enacted by the People of the State of Colorado:
XX-XX-XXX, Colorado Revised Statutes, is amended BY THE ADDITION OF A NEW SUBSECTION to read:
XX-XX-XXX. Assessment and levy by board. (5) THE BOARD OF DIRECTORS SHALL REFUND TO THE TAXPAYERS WITHIN THE DISTRICT BY JULY 1, 1999, ALL FUNDS RECEIVED BY THE DISTRICT FROM ANY PAST JUDGMENT OF A COURT OF RECORD ENTERED AFTER JANUARY 1, 1985, AND BEFORE JULY 1, 1995, FOR ATTORNEY FEES, COURT COSTS, AND INTEREST. SUCH REFUND SHALL BE MADE BY A CHECK OR OTHER NEGOTIABLE INSTRUMENT MAILED TO THE LAST KNOWN ADDRESS OF EACH SUCH TAXPAYER. THE AMOUNT OF SUCH REFUND SHALL BE PROPORTIONATE TO THE TAX LIABILITY OF EACH SUCH TAXPAYER AS SUCH TAX LIABILITY WAS ESTABLISHED ON DECEMBER 31, 1998. THIS SUBSECTION (5) WAS ADOPTED BY A VOTE OF THE PEOPLE AT THE GENERAL ELECTION IN 1998.
[1] Payments by Conservation district to Public School Fund and School Districts
[1] Board of Directors, Rio Grande Water Conservation District
[1] Refund to Taxpayers by Conservation District